IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATE OF AMERICA ex rel. MELVIN MOORE<br>          Petitioner<br>v.<br>BLAIR J. LEIBACH<br>          Defendant. | No. 02 C 5865<br><br>HONORABLE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

Before this court is the 28 U.S.C §2254 petition for the writ of habeas corpus filed by Melvin Moore ("Moore" or "Petitioner"). For the reasons stated below, this petition is DENIED. Moore's motion for status is DENIED as MOOT. All other motions are MOOT and TERMINATED. This case is CLOSED.

Factual and Procedural Background[1]

On November 1, 1996, a Circuit Court of Cook County jury found Moore guilty of first degree murder and attempted armed robbery for the murder and attempted robbery of Willie Bush.

The trial began with the prosecutor's promise, in his opening statement, that he would present multiple eyewitnesses who would testify to seeing Moore at the crime scene.

---

[1] Unless rebutted by clear and convincing evidence, findings of fact made by the state courts in this case are presumed to be correct. *See Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000).

During the course of the trial, the prosecutor presented one witness who placed Moore at the scene of the crime. That witness was Ronald Sims, a seventeen-year-old that had seen Moore "plenty of times" prior to the shooting.

Shortly before the shooting, Sims was standing with his friends in a neighborhood play lot. The group first noticed Willie Bush. One of Sims' friends said that Bush was giving out money. A few minutes later, one of Sims' friends exclaimed, "Hey man, he's got a gun." Sims turned and saw Bush and another man, who he identified at trial as Moore. Moore was pointing a gun at Bush. Then Sims saw a third man, who he identified at trial as Timothy White, walk up to Bush and Moore. White stationed himself behind Moore. Sims heard Moore say, "Hey, man, give me your money." Sims then turned and ran into an alley. A few seconds later, he heard a gunshot from the area where Moore was standing. Sims stayed hidden until the police arrived. He then emerged and gave the police a description of Moore and White.

Sims told the officers that he could see all of Moore's face, that Moore was wearing a red t-shirt and dark pants at the time of the shooting, that Moore was either five feet six inches tall or five feet seven inches tall, and that Moore had a dark complexion and short black hair. Sims stated that White was wearing a white t-shirt with black shorts and wore his hair in three ponytails. Two days later, on September 11, 1995, Sims identified a picture of White as the second man who approached Bush and Moore but told police at the time that he "wasn't positive." On September 14, 1995, Sims viewed a line-up and again identified White as the second man who approached Bush; once again, he stated that he was not positive about the identification.

Sims was more confident in his identification of Moore. On September 14, he viewed an array of photographs and identified Moore as the man who pointed the gun at Bush. He viewed a lineup on October 8, 1995 and again positively identified Moore.

Detective William Whalen testified during direct examination that Sims identified Moore while viewing a set of five photographs and during a line-up. Whalen said that in both instances, Sims had indicated he was positive of the identification. Whalen also testified that his partner Detective Munoz received a phone call at the police station on the day of the shooting that linked Moore with the shooting. On cross examination, Whalen testified that he was told during the course of his investigation that two men and one women were in the lot immediately before the shooting and that the men were identified by their nicknames of T-Dog and Tim Bud. He testified that Moore did not go by either of those nicknames.

On redirect, Whalen testified that an anonymous tipster told Munoz that Moore, T-Dog, and Tim Bud were involved in Bush's shooting. Moore's trial counsel did not object to the statements about the tip.

Bush's brother, Lucious Williams, also testified at trial. He said he saw his brother alive on September 9, 1995, and identified a picture of Bush on the cover of Bush's funeral program. The funeral program, which included Bush's obituary, was admitted into evidence without objection.

Lewanda and Lawrence Jones, their son Craig Witheral, and Detective Munoz were called as defense witnesses. Lawrence Jones testified that Bush rang his doorbell, and his son told Bush to go away. Lawrence Jones went outside, saw Bush in the building across the street,

and then went back into house. After about a half-hour, while still inside his house, he heard a sound like a firecracker and saw Bush lying on the sidewalk.

Lewanda Jones testified that she looked out her window and saw a woman and two men talking to Bush at about 3 p.m. Two or three minutes later, she heard a gunshot and looked out her window again. This time, she saw the men standing over Bush. One, a man with braids, was looking for what she assumed was money on the victim's person. The other stood by and watched. Lewanda Jones identified the man with braids as Moore's co-defendant, Timothy White, during a line up. She said she did not get a "good look" at the face of the second male, who was wearing a cap or a hat. She did not recognize anyone from a second group of photographs the police showed her.

Craig Witheral testified that he saw a woman and two men named T-Dog and Tim Bud ask Bush for money. He said that he went into his house, and then heard a sound like firecrackers ten or fifteen minutes later. Wen he looked outside, he did not see anything. Witheral identified a man other than Moore as Tim Bud during a lineup at the police station a few days later. On cross-examination, he stated that he did not see anyone shoot Bush or approach Bush, did not see anyone go through Bush's pockets, and was in the house for ten to fifteen minutes before the shooting.

Detective Munoz testified that he interviewed Sims after the shooting. He said Sims described one of the two men as five foot six or five foot seven, one hundred and thirty pounds, and dressed in a red t-shirt and black shorts. He did not recall being informed that Sims had seen Moore many times before the shooting.

During closing arguments, the prosecutor advised the jury that it would receive instructions on how to weigh identification testimony. The actual instruction stated, "When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following: [t]he opportunity the witness had to view the offender at the time of the offense; or [t]he witness's degree of attention at the time of the offense; or [t]he witnesses earlier description of the offender; or [t]he level of certainty shown by the witness when confronting the defendant; or [t]he length of time between the offense and the identification confrontation." The prosecutor enumerated the factors set out in the instruction. She then told the jury to look closely at the instruction and stated, "You only need to find one of those facts to have a good identification." Defense counsel objected. After defense counsel's objection was overruled, the prosecutor stated that all five factors supported a finding of reliability.

In his closing argument, defense counsel told the jury to consider all the identification factors as well as all the other instructions. He later characterized the prosecutor's claim that only of the factor needed to be present as "misleading" and "preposterous." After the prosecutor objected to defense counsel's statement, the judge told the jury that the instruction would indicate the factors to be considered and that it was for the jury to decide "whether or not any or all of those factors [we]re present."

During the course of the trial, the judge also instructed the jury that opening arguments were not evidence and should be disregarded if not supported by the evidence. In addition, the judge advised the jury that "[y]ou must not consider that anonymous phone call in any way,

shape or form as to indicating or supporting whoever the offenders were in this case. It's simply to show you why the officer did what he did after that phone call."

After he was found guilty, Moore was sentenced to concurrent prison terms of forty years for first degree murder and fifteen years for armed robbery. The Illinois Appellate Court affirmed Moore's conviction in an unpublished order issued on February 16, 1999, and ruled that his good-time credit was not to be calculated according to the challenged version of the statute.

On direct appeal, Moore's counsel offered a variety of arguments for reversal. He argued that: 1) the evidence was insufficient to prove he was guilty beyond a reasonable doubt when it was based upon the testimony of a single eye-witness 2) the acquittal of Moore's co-defendant raised a reasonable doubt of Moore's guilt 3) Moore was denied a fair trial when the prosecutor failed to present testimony of eyewitnesses referenced in the prosecutor's opening argument and was denied effective assistance of counsel when his trial counsel failed to preserve the issue for review 4) the admission of hearsay regarding an anonymous tip was a reversible error and Moore was denied effective assistance of counsel when his trial counsel failed to preserver the issue for review 5) the prosecutor misstated the instruction on identification testimony in his closing argument and accused Moore's lawyer of trying to "hoodwink" the jury 6) the admission of Bush's obituary was reversible error and Moore was denied effective assistance of counsel when his lawyer failed to object and preserve the issue for review and 7) the statute which governed good-time credit allotment was passed in violation of the Illinois constitution. Moore did not prevail on direct appeal. He then filed a petition for leave to appeal to the Illinois Supreme Court; it was denied on October 6, 1999.

Moore also filed a petition for post-conviction relief, which the trial court dismissed on January 4, 2004. The Illinois Appellate Court affirmed the denial of Moore's post-conviction petition on October 2, 2001. The Illinois Supreme Court denied leave to appeal on February 6, 2002. Moore then filed a habeas petition in this Court.

## Standard of Review

Federal courts may not grant a writ of habeas corpus to a prisoner held under a state court judgment unless custody of the prisoner violates the Constitution, laws, or treaties of the United States. 28 U.S.C. §2254 (a); *Mahaffey v. Schomig*, 294 F.3d 907, 914 (7th Cir. 2002). Moreover, before a federal court will grant a habeas petition, the petitioner must both exhaust state remedies and comply with state rules regarding procedural default. *Mahaffey*, 294 F.3d at 914-915. Habeas corpus petitioners exhaust all of their state court remedies when: (1) they present them to the highest court of the state; or (2) no state remedies remain available to the petitioner at the time that the petition is filed. *See Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991).

Procedural default occurs either when (1) a petitioner fails to raise an issue on direct appeal or post-conviction review, *see Farrell*, 939 F.2d at 410; or (2) the state court clearly relies on a state procedural bar as an independent basis for its denial of relief. *See Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).

Even where a federal court reaches the merits of a petitioner's claim, relief is only warranted in certain circumstances. To prevail, a habeas corpus petitioner must show that adjudication of the case resulted in a decision that was:(1) contrary to, or (2) an unreasonable application of clearly established federal law as determined by the United States Supreme Court;

or, (3) based on an unreasonable interpretation of the facts in light of the evidence presented in the state-court proceedings. 28 U.S.C. §2254(d).

In cases where the state court opinion was unreasonable–or in cases where the state judiciary failed to address a constitutional claim despite an opportunity to do so–§2254(d) is no longer the relevant standard. *See Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003). Instead, "it is §2254(a), not §2254(d), that sets the standard: the court issues 'a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Id.*

## Discussion

Given that both sides agree that Moore has exhausted his remedies in state court and has not procedurally defaulted any of his claims, this Court will review this case on its merits. Moore's pro se petition, construed generously, is based on two different types of claims. First, he argues that he was denied effective assistance of counsel. Second, he argues that he was denied due process and a fair trial.

Moore raises his ineffective assistance of counsel claim based on three different problems he sees with his trial counsel's conduct. First, he claims counsel was ineffective for failing to object to the fact that the prosecutor's opening statement promised a number of witnesses would place Moore at the murder scene when only one witness was actually presented at trial. Second, he claims his counsel was ineffective for failing to object to hearsay testimony related to a anonymous police tip identifying him and two others as perpetrators of the crime. Third, he claims his counsel was ineffective for failing to object to the admission of the murder victim's obituary.

Because the state court opted not to address Petitioner's ineffective assistance of counsel claim, this Court will review the claim under §2254(a) rather than §2254(d). *See Aleman*, 320 F.3d at 690 ("If the state court's opinion *was* unreasonable--or if the state judiciary did not address the constitutional claim, despite an opportunity to do so--then §2254(d) no longer applies...it is §2254(a) that sets the standard."(emphasis in original)).[2] The text of §2254(a) states that a court "shall entertain an application for a writ of habeas corpus...only on the ground that [the petitioner] is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. §2254(a). In the Seventh Circuit, a determination of whether a prisoner's custody violations the Constitution, laws, or treaties of the United States "depends, first, on whether all substantive rules have been respected (the merit of the claim) and, second, on whether any error *caused* the custody." *Aleman*, 320 F.3d at 690 (emphasis in original). The reviewing court "may take up issues in whatever sequence seems best, given the nature of the parties' arguments..." *Id.* at 691. "[M]ost of the time, this choice depends on prudence, rather than obligation." *Id.* at 691.

This Court finds it prudent to begin by reviewing the merits of Moore's ineffective assistance of counsel claim. When reviewing an ineffective assistance of counsel claim, this Court uses the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). First,

---

[2]The Respondent claims that because the Illinois Appellate court opted to determine that plain error had not occurred as a result of the prosecutor's failure to present promised witnesses, it "actually had to determine the underlying [ineffective assistance of counsel claim] in order to determine if there was 'plain error.'" The Seventh Circuit has noted, however, that a state court's analysis of plain error is not equivalent to a judgment on the merits of a claim. *See, e.g., Miranda v. Liebach*, 394 F.3d 984, 992 (7th Cir. 2005) ("As we have previously recognized, an Illinois court does not reach the merits of a claim simply by reviewing it for plain error. *See, e.g., Neal v. Gramley*, 99 F.3d 841, 844 (7th Cir. 1996); *see also, Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003)(coll. cases).").

Moore must prove that his counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Second, Moore must prove that, but for counsel's deficiency, there is a reasonable probability that the outcome would have been different. *See id.* at 694. Moore must prove both in order to prevail. *See id.* at 697. Failure to prove prejudice, then, is sufficient to defeat an ineffective assistance of counsel claim. *See id.* at 697. As the Supreme Court has noted, "there is no reason for a court deciding an ineffective assistance claim...even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies...If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697. Moreover, Moore "bears a heavy burden in showing that his counsel was ineffective and that his defense was actually prejudiced." *U.S. v. Alex Janows & Co.*, 2 F.3d 716, 721 (7th Cir. 1993)(citing *United States v. Holland,* 992 F.2d 687, 691 (7th Cir. 1993)).

In this case, Moore fails to show prejudice such that even if trial counsel had acted differently, he would have prevailed at trial. He was identified by an eyewitness, Sims, on three separate occasions. Sims had an unobstructed view of Moore pointing a gun at the decedent right before the shooting. He recognized Moore, having seen him "plenty of times" before then. Sims was not impeached. None of the other witnesses disproved or contradicted his testimony.

There is not a reasonable probability that the outcome at trial would have been different had counsel acted in the manner Moore wants him to have acted. At best, the jury would have been alerted to the fact that the prosecution failed to present promised witnesses: a fact, of

course, that would have been obvious to anyone sitting in the jury box. As for the anonymous tip, the judge delivered an adequate curative instruction. In addition, there is a possibility that objecting to the anonymous tip and the obituary would have drawn attention to those issues, which counsel may not have wanted to do. Finally, even if defense counsel had acted as Moore believes he should have, the jury still would have been presented with the unwavering testimony of Sims. Given that Moore has failed to prove sufficient prejudice, his ineffective assistance of counsel claim must fail. Moore fails the first part of the Seventh Circuit's test under §2254(a), and therefore is not entitled to habeas relief.[3]

Moore argues that he was denied due process and a fair trial. He claims the trial court erred when it allowed the prosecution to enter the decedent's obituary into the evidence. He also claims that the prosecutor committed prosecutorial misconduct by misleading the jury by promising to present multiple eyewitnesses who would place Moore at the scene of the crime and then only presenting one witness. In addition, he contends he was denied due process when the prosecutor gave an erroneous interpretation of a jury instruction during closing arguments.

---

[3] A separate review of whether the error caused custody is unnecessary in this case. As the Supreme Court noted when confronted with an analogous situation in *Kyles v. Whitley*, "[O]nce a reviewing court applying *Bagley* has found constitutional error there is no need for further harmless-error review. Assuming arguendo, that a harmless-error enquiry were to apply, a *Bagley* error could not be treated as harmless, since 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different'...necessarily entails the conclusion that the suppression must have had 'substantial and injurious effect or influence in determining the jury's verdict.'" *Kyle v. Whitley*, 514 U.S. 419, 435 (1995)(citation omitted). In its analysis, the Supreme Court noted, "[I]t is unnecessary to add a separate layer of harmless-error analysis to an evaluation of whether a petitioner in a habeas case has presented a constitutionally significant claim for ineffective assistance of counsel." *Id.* at 436, fn. 9, citing *Hill v. Lockhart*, 28 F.3d 832, 839 (8th Cir. 1994). In light of these cases, this Court determines that it is appropriate to conclude its analysis of Petitioner's ineffective assistance of counsel claim with a finding that Petitioner did not suffer prejudice such that he is entitled to relief under *Strickland*.

Moore argues that the trial court erred, on the basis of Illinois law, when it decided to admit Bush's obituary into evidence. As an initial matter, the Seventh Circuit has stated that "state court evidentiary errors do not normally entitle a defendant to habeas relief." *Anderson v. Sternes*, 243 F.3d 1049, 1053 (7th Cir. 2000). Habeas relief is appropriate only when the erroneous evidentiary rulings were "so prejudicial that [they] compromise[d] the petitioner's due process right to a fundamentally fair trial." *Id.*

Even if the trial court did err in admitting the obituary, Moore has not shown that the decision to admit the obituary was "an error of such magnitude that it took on a constitutional dimension." *See Howard v. O'Sullivan*, 185 F.3d 721, 723 (7th Cir. 1999). The reference to the obituary was brief and isolated. The prosecutor did not indicate that the obituary was integral to a finding of guilt, nor did use the obituary as a basis to elicit testimony regarding the impact of Bush's death on his family.

In addition, in order to grant relief on an erroneous evidentiary hearing, the court must be convinced that the alleged error must have produced "a significant likelihood that an innocent person has been convicted." *Anderson*, 243 F.3d at 1053. As the Illinois Appellate Court noted, such was not the case. This Court concludes, based upon a review of the record, that there is no significant likelihood that Moore is innocent of the crimes for which he was convicted. Strong eyewitness testimony–and not a fleeting reference to Bush's obituary–led to Moore's conviction. In the face of the record, no rational person could believe that the jury was so swayed by the admission of the obituary that it rushed to convict an innocent man. *See Howard*, 185 F.3d at 723-24 (7th Cir. 1999) (citations omitted). Consequently, his due process claim as it relates to the admission of the obituary must be rejected.

Moore also argues that the prosecutor committed prosecutorial misconduct by misleading the jury with respect to eyewitness testimony. In the opening statement, the prosecutor promised to present multiple eyewitnesses who would place Moore at the scene of the crime; at trial, the prosecution only produced Sims.

In order to prove prosecutorial misconduct, a petitioner must demonstrate both that statements made by the prosecutor were improper and that those improper statements deprived petitioner of a fair proceeding. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). For there to be a due process violation, the comments must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The trial is evaluated in its entirety, according to the six factors: 1) whether the prosecutor's statements manipulated or misstated the evidence, 2) whether the statements implicated specific Bill of Rights provisions, 3) whether the improper statements were an 'invited response' to the argument of defense counsel 4) whether the trial court instructed the jury to disregard the improper statements 5) whether the defense had and used the opportunity for rebuttal to counter the prosecutor's statements and 6) the weight of evidence against the defendant. *Id.* at 181-183.

The prosecutor did misstate the evidence by claiming that several eyewitnesses would place Moore at the scene of the crime. The other *Darden* factors, however, lead this Court to believe that habeas relief is unwarranted. The statement did not implicate a specific Bill of Rights provision. The judge advised the jury that the opening arguments did not constitute evidence. *See U.S. v. Napue*, 834 F.2d 1311, 1324 (7th Cir. 1990)("We cannot, of course, know with certainty what effect this curative instruction had upon the jury, but the presumption in our

system is that such instructions are taken seriously."); *see also United States v. Nobles*, 69 F.3d 172, 184 (7th Cir.1995). The defense had ample opportunity to cross-examine the one eyewitness that did place Moore at the scene of the crime and point out other weaknesses with the prosecution's case. Moreover, defense counsel had the opportunity to point out in closing that the prosecution had not delivered what it promised: several witnesses who would place Moore at the scene. Finally, the prosecution presented adequate evidence such that a rational trier of fact could convict Moore beyond a reasonable doubt on the basis of Sims' testimony.

This Court's conclusion is in line with that of the Illinois Appellate Court. Although the state court did not explicitly mention *Darden*, it did conclude that the prosecutor's failure to present promised witnesses did not keep defendant from having a fair trial because the error was harmless under Illinois law and added, "that statement did not deny the defendant a fair trial since...the defendant was not substantially prejudiced by it." The court went on to note that the statement was not detailed and failed to do more than place Moore at the scene of the crime. Any prejudicial impact was minimized, the court reasoned, because the jury was instructed that opening arguments were not evidence and should be disregarded if unsupported by evidence. The court then concluded that the error was harmless, as Moore did not suffer from substantial prejudice as a result.

While the state court did not specifically undertake the review of prosecutorial misconduct set out in *Darden*, this Court does not find its approach to the prosecutorial misconduct to be contrary to, or an unreasonable application of, federal law. A state court's failure to apply federal law does not lead to habeas relief if the standard the state court applied is as demanding as the federal standard. *See Oswald v. Betrand*, 374 F.3d 475, 477 (7th Cir. 2004),

*citing Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)(per curiam); *Early v. Packer*, 537 U.S. 3, 8, (2002)(per curiam). A state court finding no substantial prejudice resulted from a prosecutor's comment is in accordance with the determination that the comment did not so infect the trial with unfairness as to make the resulting conviction a denial of due process.

Moore also contends that he is entitled to habeas relief because the prosecutor misstated the applicable law as to how the jury should evaluate the witness identification testimony. The Illinois Appellate court began its analysis by noting that in *Manson v. Brathwaite*, 432 U.S. 98, 113-114 (1977), the Supreme Court explained that reliability of an identification should be judged by a totality of the circumstances and by the factors set out in *Neil v. Biggers*, 409 U.S. 188 (1972). The *Biggers* factors are "the opportunity the witness had to view the offender at the time of the offense, the witness's degree of attention at the time of the offense, the witnesses earlier description of the offender, the level of certainty shown by the witness when confronting the defendant, and the length of time between the offense and the identification confrontation." *Manson*, 432 U.S. at 114. The specific jury instruction tendered to the jury was a version of the test set out by the *Manson* court.[4]

The Illinois Appellate court determined that the prosecutor told the jury that it only needed to review one of the *Biggers* factors when determining witness reliability. The court then concluded that the prosecutor's interpretation was erroneous and noted that it was not aware of any case law stating that only one factor needed to be present. Instead, the state court interpreted *Manson* to stand for the proposition that an identification should be deemed reliable if, after considering all the factors, "it is found that, based upon whatever of those factors are present, the

---

[4] Moore does not take issue with the actual instruction presented to the jury.

witness had adequate opportunity to observe the accused and whether the witness is credible." The state court noted that the *Biggers* factors as listed in *Manson* are not disjunctive "as would be necessary to lend credence to the prosecutor's assertion that only one factor need be present."

Even though it found the prosecutor's statement to be erroneous, the Illinois Appellate court did not hold that the statement was grounds for reversal. The court stated that it could not conclude that the prosecutor's argument "constituted a material factor in defendant's conviction" such that reversal was appropriate. The court added: "It would appear from the record that any prejudice resulting from the prosecutor's remark would have been minimal" because the trial court had delivered a curative instruction.

The circumstances surrounding the prosecutor's statement support the state court's determination that at one point the prosecutor led the jury to believe that as long as its review of one factor indicated that the identification testimony was reliable, it did not need to consider the totality of the circumstances or review the other four factors. The related conclusion that the prosecutor erroneously instructed the jury is neither contrary to nor an unreasonable application of federal law. This Court, like the Illinois Appellate Court, is not aware of any case law that states that once a finder of fact is satisfied that one *Biggers* factor indicates the testimony was reliable, it need not consider the other factors or engage in a review based on the totality of the circumstances.

In addition, the Illinois Appellate court's finding that the prosecutor's comment did not constitute a material factor in Moore's conviction was neither contrary to nor an unreasonable application of federal law. This Court does not believe that the prosecutor's actions so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See Darden*,

477 U.S. 168 (1986). In this case, the prosecutor did misstate the law. That conduct did not, however, implicate a specific Bill of Rights provision. The statement was not an invited response to the arguments of defense counsel. After the defense objected to her statement, she changed direction and argued that all five factors were present.

Defense counsel used the opportunity for rebuttal to counter the prosecutor's earlier statement that the jury could find an identification reliable on the basis of one factor: he advised the jury that it had to take all the factors into account. The trial court advised the jury that the instruction would indicate all the factors to be taken into account. The instruction included all five factors and stated that the jury was to consider all the facts and circumstances in the evidence.

Moreover, the jury heard testimony from Sims that indicated that he was a reliable witness. He testified that his view of Moore before the shooting–from a vantage point of approximately 50 feet–was unobstructed. While he did not see Moore shoot Bush, he did see Moore point a gun at Bush. When the police arrived at the scene of the shooting, Sims gave them a detailed description of Moore. Five days later, he identified Moore in a photo array. Almost a month later, he identified Moore in a line-up. Officer Whalen testified that Sims was confident of the identification in both instances. *See Rodriguez v. Peters*, 63 F.3d 546, 557 (nine month delay between murder and in-court identification of defendant not so long that identification must be deemed unreliable).

The state court felt that Sims' testimony was reliable and that the evidence was sufficient to support a conviction, despite the prosecutor's misstatement. After viewing the comment in the context of the entire trial, this Court agrees and concludes that it was not so inflammatory and

prejudicial that Moore was deprived of a fair trial. Even if the prosecutor had not made the comment, the weight of the evidence indicates that Moore would have been convicted. Neither Sims' detailed testimony about Moore approaching the decedent, threatening him, and pointing a gun at him right before the crime, nor Sims' testimony about hearing a shot emanating from the place where Moore was standing were effectively disputed. Sims testified that he positively identified Moore on two different occasions prior to his in-court identification. The evidence presented suggested that Sims was a reliable witness.

The state court's conclusion that the prosecutor's comment was not a ground for reversal is consistent with the rule set forth in *Darden*. *See U.S. v. Uchtman*, 2005 WL 1766373 (N.D. Ill. 2005)(finding state court's conclusion that remarks at issue could not have been "a material factor in the conviction or that the jury's verdict might have been different absent the remark" a consistent application of *Darden*). The statement did not cause sufficient prejudice such that Moore was denied due process.

## Conclusion

For the foregoing reasons, Moore's 28 U.S.C §2254 petition for the writ of habeas corpus is DENIED. Moore's motion for status is DENIED as MOOT. All other motions are MOOT and TERMINATED. This case is CLOSED.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: 10/20/05